UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| CAROLYN RYGG, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>DAVID F. HULBERT, et al.,<br><br>Defendants. | CASE NO. C11-1827JLR<br><br>ORDER DENYING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT |

Before the court is an Amended Motion for Summary Judgment brought by Defendants Larry and Kaaren Reinertsen ("The Reinertsens"). (Mot. (Dkt. # 225).) The motion asks the court to dismiss the only two claims left in this lawsuit: a claim for electronic eavesdropping and a claim for invasion of privacy. The Plaintiffs, Carolyn Rygg and her adult son Craig Dilworth (collectively "the Ryggs"), brought these claims against their neighbors the Reinertsens alleging that the Reinertsens used a "listening device" to eavesdrop on conversations in the Ryggs' home in violation of state and federal law. The Reinertsens ask the court to enter summary judgment in their favor, but

they present very little evidence to support their motion, and the evidence they do present shows that there are factual disputes going to the core of the Ryggs' claims. Faced with this equivocal record, the court holds that summary judgment is inappropriate at this time and accordingly DENIES the Reinertsens' motion (Dkt. # 225).

## I. BACKGROUND

By now, both sides are abundantly familiar with the extensive factual and procedural history of this litigation, so the court will not repeat that history in detail here. The specific claims remaining in this case relate only to electronic eavesdropping. The Ryggs allege that the Reinertsens had a directional microphone set up in their living room aimed at the Ryggs' window. (Am. Compl. (Dkt. # 7) ¶ 939.) Allegedly, the Reinertsens used this microphone to hear the Ryggs' private conversations in their home, including their trial strategy. (*Id.* ¶ 944.) The Ryggs allege that on November 18, 2010, they discussed in their home how the height of the Reinertsens' wood pile contradicted the Reinertsens' allegations in court. (*Id.* ¶ 940.) On November 19, 2010, the Reinertsens allegedly used the information they gained from eavesdropping to alter the height of the wood pile. (*Id.* ¶ 942.) The Ryggs allege that they wondered how the Reinertsens knew, before any court filings, that they would use the height of the wood pile in their briefing. (*Id.* ¶ 944.) The Ryggs allegedly looked into the Reinertsens' home and saw a tripod angled towards their window, and after some research, the Ryggs concluded that the tripod was a bi-directional microphone aimed into their home. (*Id.* ¶¶ 945-46.) Furthermore, the Ryggs allege that when they put a stereo system up to the window in

their home and turned the volume up, Mr. Reinertsen quickly came to the room with the microphone and began dismantling the surveillance equipment. (*Id.* ¶¶ 946-47.)

The Reinertsens, on the other hand, assert that they do not own any listening devices, that they have never eavesdropped on the Ryggs, and that the Ryggs likely observed not listening devices but telescopes, which the Reinertsens use to enjoy the "spectacular views" of Whidbey Island and Possession Sound from their living room window. (*See* Mot.) Despite these dramatically differing versions of the facts, the Reinertsens moved for summary judgment.[1]

## II. ANALYSIS

### A. Summary Judgment Standard

Summary judgment is appropriate only if the evidence, when viewed in the light most favorable to the non-moving party, demonstrates "that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Galen v. Cnty. of L.A.*, 477 F.3d 652, 658 (9th Cir. 2007). A fact is "material" if it might affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A factual dispute is "genuine" if the evidence is such that reasonable persons could disagree

---

[1] The Ryggs have also filed a "Motion to Reveal Cory D. Rein's and Schindeles' Ghostwriter" (Dkt. # 249) asking the court to somehow reveal the "probable author" of Defendants' submissions, and a "Motion for Leave to Supplement the Record" (Dkt. # 254) for this and several other motions before the court. The court DENIES the first (Dkt. # 249) as being not a proper subject for motion practice and because the court can discern from the motion no relief which it could grant, and GRANTS the second (Dkt. # 254), finding good cause to consider the evidence proffered by the Ryggs.

about whether the facts claimed by the moving party are true. *Aydin Corp. v. Loral Corp.*, 718 F.2d 897, 902 (9th Cir. 1983). The moving party bears the initial burden of showing there is no genuine issue of material fact and that he or she is entitled to prevail as a matter of law. *Celotex*, 477 U.S. at 323. If the moving party meets his or her burden, the non-moving party "must make a showing sufficient to establish a genuine dispute of material fact regarding the existence of the essential elements of his case that he must prove at trial." *Galen*, 477 F.3d at 658.

> [T]he issue of material fact required by Rule 56(c) to be present to entitle a party to proceed to trial is not required to be resolved conclusively in favor of the party asserting its existence; rather, all that is required is that sufficient evidence supporting the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial.

*First Nat. Bank of Ariz. v. Cities Serv. Co.*, 391 U.S. 253, 288-89 (1968). The court is "required to view the facts and draw reasonable inferences in the light most favorable to the [non-moving] party." *Scott v. Harris*, 550 U.S. 372, 378 (2007).

**B. The Ryggs' Two Remaining Claims**

This motion concerns the Ryggs' two remaining claims, which are for invasion of privacy and electronic eavesdropping. To prove a claim for invasion of privacy under Washington law, a plaintiff must show that the defendant "intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns" and that "the intrusion would be highly offensive to a reasonable person."[2]

---

[2] Washington State has adopted the Restatement of Torts Second Edition's understanding of invasion of privacy. *Peters v. Vinatieri*, 9 P.3d 909, 917 (Wash. Ct. App. 2000).

*Peters v. Vinatieri*, 9 P.3d 909, 917 (Wash. Ct. App. 2000). An "invasion or intrusion must be of something which the general public would not be free to view." *Mark v. KING Broad. Co.*, 618 P.2d 512, 519 (Wash. Ct. App. 1980); *Phillips v. KIRO-TV, Inc.*, 817 F. Supp. 2d 1317, 1326 (W.D. Wash. 2011).

To prove a claim for electronic eavesdropping under 18 U.S.C. § 2511, a plaintiff must prove that the defendant "intentionally intercepts, endeavors to intercept, or procures any other person to intercept or endeavor to intercept, any wire, oral, or electronic communication." 18 U.S.C. § 2511(1)(a); *see also* 18 U.S.C. § 2520(a) (providing a private right of action to "any person whose wire, oral, or electronic communication is intercepted, disclosed, or intentionally used in violation of this chapter").

### C. Summary Judgment is Not Appropriate on the Ryggs' Two Remaining Claims

The Reinertsens have not met their burden to show that there is no genuine dispute of material fact regarding the Ryggs' claims. Both of the claims remaining in this case turn on whether the Reinertsens did or did not set up a listening device to eavesdrop on conversations in the Ryggs' home. (*See* Am. Compl.) That is, if the Ryggs proved there was a listening device, they would likely have a claim for invasion of privacy because they would have shown conduct that intrudes on privacy and may be highly offensive to a reasonable person, *see Peters*, 9 P.3d at 917, and for electronic eavesdropping because they would have shown that the Reinertsens intentionally intercepted oral

communications. *See* 18 U.S.C. § 2511(1)(a). Likewise, if the Reinertsens proved there was no listening device, the Ryggs likely would not have either claim. *See id.*

The parties vigorously dispute whether there was a listening device, and both sides support their version of the facts with evidence. According to the Reinertsens, there never was any listening device. The Reinertsens present evidence to support this assertion, although most of it is in the form of self-serving affidavits: First, they testify directly that they never had any listening devices and never eavesdropped on the Ryggs. (Decl. of Larry Reinertsen (Dkt. # 222) ¶¶ 3-8 ("I have never had any eavesdropping or listening devices on my property, electronic or otherwise."); Decl. of Kaaren Reinertsen (Dkt. # 223) ¶¶ 3-8 (same).) Second, they provide pictures of two telescopes in their home and assert that the Ryggs must have seen not a listening device, but a telescope. (Decl. of L. Reinertsen ¶¶ 9-16 ("We have seen the photograph plaintiffs claim shows a 'listening device.' The photograph actually shows one of our telescopes on a tripod."); Decl. of K. Reinertsen ¶ 9 (same).) The Reinertsens argue that the combination of their testimony and the fact that they have telescopes in their home is enough to demonstrate that there is no genuine issue of material fact and that they are entitled to judgment as a matter of law. (*See* Mot.)

On the other hand, the Ryggs assert that the Reinertsens had a listening device and eavesdropped on them. The Ryggs provide evidence to support this assertion: First, they testify that three people (Ms. Rygg and her two sons) saw a listening device and that the Reinertsens used it to eavesdrop on them. (Rygg Dep. (Dkt. # 224) at 37-38, 45, 48-49, 59, 63 ("Q: And you saw this device with your own eyes? A: Yes."); Dilworth Dep.

(Dkt. # 224) at 98, 99, 102.)[3] The Ryggs can describe the device in some detail and claim to have taken a picture of it. (Rygg Dep. at 40-41; Dilworth Dep. at 99-101, 120.) Ms. Rygg testifies that it was not possible that they were mistaken and saw a telescope instead. (Rygg Dep. at 58.)

Second, the Ryggs testify about certain "cause and effect" relationships that they claim demonstrate that the Reinertsens were using a listening device. For example, the Ryggs testify that they placed a radio next to their window to create a loud noise in the listening device and that, as soon as they did so, Mr. Reinertsen ran into the room and began tinkering with the device and looking through his window at the Ryggs. (Rygg Dep. at 35-36, 46-48, 61, 65; Dilworth Dep. at 105.) Mr. Dilworth also refers to "other tests" he conducted to determine whether there was eavesdropping or spying going on. (Dilworth Dep. at 123-24.)

Third, the Ryggs present research that, they argue, demonstrates that electronic eavesdropping devices are often disguised as telescopes or other objects. (Decl. of Detective Grant Romaine (Dkt. # 241) ¶ 14; Decl. of Craig Dilworth re Research on Audio Surveillance Devices that Resemble Telescopes (Dkt. # 243).)

Fourth, the Ryggs assert that the Reinertsens knew information that was only discussed inside their home and that could only have been learned by eavesdropping. (Rygg Dep. at 36.) For example, Ms. Rygg testifies that the Reinertsens knew "details of

---

[3] To avoid confusion, the court points out that, according to the court's usual practice, pinpoint citations to depositions transcripts refer not to the page numbers as labeled on the deposition transcripts themselves, but to the page numbers as labeled in the court's CM/ECF docket page-numbering system.

[her] schedule," and "[i]nformation about [her] parents and [her] past and [her] living situation that were never shared with them." (Rygg Dep. at 36.) Mr. Dilworth testifies that "[t]hey know stuff about our schedule. They know stuff about our conversations that they were not privy to in our house." (Dilworth Dep. at 113.) Ms. Rygg describes "reactions to conversations that I have had in my home and reactions that imply pre-knowledge of conversations that I have had in my home . . . ." (Rygg Dep. at 59.) Mr. Dilworth testifies that the Reinertsens took actions in the litigation between the parties that could only have been founded on information learned from eavesdropping. (Dilworth Dep. at 103-04, 106-08 ("Q: Things have happened that you believe only happened because of information that had to have been gleaned through unlawful eavesdropping[?] A: "That's correct.").)

Fifth, the Ryggs present a declaration from a detective, Grant Romaine, who claims to have investigated the Reinertsens and concluded that they are conducting surveillance on the Ryggs. (*See* Romaine Decl.) Mr. Romaine bases his opinion on "observations of electronic devices mounted on the outside of the Reinertsens' property," the Reinertsens' answers to deposition questions, reports of the Reinertsens' "stalking" behavior, and certain "[a]dmissions by Mrs. Reinertsen that she has eavesdropped on conversations occurring on the Rygg property . . . ." (*Id.* ¶ 6.)

Finally, the Ryggs point out that the Reinertsens themselves admit they installed a "fake camera on their deck, which has a motion sensor and [] twists and turns and makes a whirring sound when it senses motion." (Rygg Dep. at 35.) This admitted fact corroborates the Ryggs' version of events by demonstrating that installing a listening

device would not be too far removed from the Reinertsens ordinary pattern of behavior. Along these same lines, the Ryggs testify that the Reinertsens recently installed "a little black square box thing that I believe is a listening device." (Rygg Dep. 67.)

Viewing all of this evidence together, it is difficult to reach any conclusion but that the parties have differing versions of the facts and that both parties support their version of the facts with evidence. To resolve the factual dispute between the parties would require weighing the conflicting evidence and deciding in favor of one party or the other. That is not the court's role on a summary judgment motion. *Anderson*, 477 U.S. 242, 249-50. Instead, the court must consider all evidence in the light most favorable to the non-moving party. *Celotex*, 477 U.S. at 322. Viewing the evidence in this way, the court concludes that there are genuine issues of material fact and summary judgment is not appropriate. The dispute is genuine because reasonable persons could disagree about which side is correct—there is enough evidence outlined above that a reasonable factfinder could conclude that the Reinertsens are liable to the Ryggs. *See Aydin*, 718 F.2d at 902. Further, the dispute is material because, as discussed above, its resolution will likely affect the outcome of the case. *Anderson*, 477 U.S. at 248. As such, the parties must proceed to trial.

//

//

//

//

//

## III. CONCLUSION

For the reasons stated above, the court DENIES the Reinertsens' Amended Motion for Summary Judgment (Dkt. # 225), DENIES the Ryggs' "Motion to Reveal Cory D. Rein's and Schindeles' Ghostwriter" (Dkt. # 249), and GRANTS Ms. Ryggs' motion for leave to supplement the record (Dkt. # 254). This matter is set for trial commencing at 1:00 PM on June 3, 2013. Each side will have a total of six hours for jury selection, opening statements, witnesses, and closing argument.

Dated this 24th day of April, 2013.

JAMES L. ROBART
United States District Judge